UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| **IRETTA LYNN ASHBROOK,** | CIVIL NO. 6:20-140-KKC |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| **ETHICON INC.,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

Plaintiff Iretta Lynn Ashbrook filed suit against Defendant Ethicon, Inc. ("Ethicon") alleging several claims arising out of the surgical implantation of a product, the TVT-Oturator (the "TVT-O"), manufactured by Ethicon to treat female stress urinary incontinence. Before the Court are Defendant's motions for summary judgment (DE 63 & 76) and motions to exclude the case-specific opinions of Plaintiff's expert witnesses (DE 64, 65, & 66). For the reasons set forth below, the Court GRANTS Ethicon's motions for partial and supplemental summary judgment (DE 63 & 76), and DENIES as moot Ethicon's remaining motions to exclude the opinions of Plaintiff's expert witnesses (DE 64, 65, & 66).

I.  Background

On October 29, 2010, at the Baptist Regional Medical Center in Corbin, Kentucky, Iretta Lynn Ashbrook ("Ashbrook") was implanted with the TVT-O for treatment of stress urinary incontinence. Following implantation, approximately six months later in April of 2011, she began to experience severe discomfort and pain. (DE 16 at 6, ¶ 6(b)). Some of the reported symptoms include stress urinary incontinence; vaginal bleeding and pain; pelvic and groin pain; edema, hematuria; recurrent urinary tract infections, bladder neck obstruction; bleeding and urinating during intercourse; and dyspareunia. (*Id.* at 6, ¶ 5(b), 6(a)).

Eventually, portions of the mesh product were removed. The first surgery in the removal process occurred on June 14, 2012 at the Central Baptist Hospital in Lexington, Kentucky; the second surgery occurred on November 30, 2015 at the Vanderbilt Medical Center in Nashville, Tennessee. (*Id*., at 5-6, ¶ 5(a)).

Attributing the symptoms experienced to the TVT-O, Ashbrook commenced this multi-district litigation action against Ethicon, on May 8, 2013, in the Southern District of West Virginia. (DE 1). After several years of pretrial rulings, Ethicon filed a partial motion for summary judgment on October 28, 2019, and its respective expert witness challenges on November 3rd and 4th. The instant action was transferred to this Court on July 1, 2020. (DE 55). On September 16, 2020 this Court held a status conference. (DE 62; *see also* DE 67). There, the parties indicated their desire to move forward with this case and resolve the merits of the motions that had been pending. Ethicon further indicated a desire to supplement its briefings. Thus, at the conclusion of the conference, the Court established new briefing deadlines. (*Id.*). On October 15, 2020, Ethicon filed a supplemental motion for summary judgment. (DE 76). All of the pending motions are now ripe.

Plaintiff alleges the following 18 claims in her Complaint: negligence (Count I); strict liability – manufacturing defect (Count II); strict liability – failure to warn (Count III); strict liability – defective product (Count IV); strict liability – design defect (Count V); common law fraud (Count VI); fraudulent concealment (Count VII); constructive fraud (Count VIII); negligent misrepresentation (Count IX); negligent infliction of emotional distress (Count X); breach of express warranty (Count XI); breach of implied warranty (Count XII); violation of consumer protection laws (Count XIII); gross negligence (Count XIV); unjust enrichment (Count XV); loss of consortium (Count XVI); punitive damages (Count XVII); and discovery rule and tolling (Count XVIII). (DE 1 at 5-6, ¶ 13). Since briefing began, however, as described

more fully below, Ashbrook has specifically abandoned several of these claims by acknowledging that they are fatally flawed.

## II. Applicable Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the nonmoving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine dispute for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24.

"A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the nonmoving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). The

nonmovant "must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted). However, the Court is under "no … duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

Viewing the evidence in the light most favorable to the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999).

### III. Analysis
#### a. Preliminary Matters

Ashbrook concedes that dismissal of the following claims is proper: manufacturing defect (Count II), strict liability-defective product (Count IV); fraud (Counts VI, VII, VIII), negligent misrepresentation (Count IX)[1], negligent infliction of emotional distress (Count X), breach of warranties (Count XI and XII), consumer protection (Count XIII), and unjust enrichment claims (Count XV). (DE 72 at 1-2, DE 79 at 1).

Further, Ashbrook has not indicated her intent to pursue claims for loss of consortium (Count XVI), punitive damages (Count XVII), and discovery rule and tolling (Count XVIII). Specifically, of the viability of these claims, Ethicon notes that

> [t]he Ashbrooks divorced after this suit was filed, and there is no indication that Mr. [James] Ashbrook intends to pursue a loss of consortium claim or that

---

[1] While the Court notes contradictory statements in Plaintiff's response to the partial motion for summary judgment (*see* DE 72 at 1-2, 6), regarding her desire to abandon, or alternatively pursue, Counts VI, VII, VIII, and IX, the Court will find that Plaintiff has conceded that the claims are not viable.

> he even could. Ex 2, Iretta Ashbrook Dep. at 67:7-9. …While Plaintiff also asserts "claims" for Discovery Rule and Tolling (Count XVIII) and Punitive Damages (Count XVII), "[a] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Cutter v. Ethicon, Inc.*, No. CV 5:19-443-DCR, 2020 WL 109809, at *10 (E.D. Ky. Jan. 9, 2020) (citations omitted). Likewise, "[d]iscovery rule and tolling" is not a separate cause of action under Kentucky law. *See id.* (citing *Petrey v. Ethicon, Inc.*, No. 5: 19- 298-DCR, 2019 WL 5295185, at *3 (E.D. Ky. Oct. 18, 2019)).

(DE 76 at 1, n.1). Ashbrook has failed to respond to these assertions or otherwise address these claims on the merits, in any of its responses. In review, however, the Court finds that Ethicon's assertions are well-taken. As such, the Court will find that Plaintiff has abandoned these claims (Counts XVI-XVIII) and will dismiss the claims with prejudice. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." (citations omitted).

Accordingly, the remaining claims are as follows: negligence and gross negligence— failure to warn and design defect (Count I & XIV); strict liability—failure to warn (Count III); and strict liability—design defect (Count V).[2] Finally, the parties agree that substantive Kentucky law applies in this case because it appears to have the most significant contacts to the facts underlying Ashbrook's alleged injuries resulting from the product. The Court, accordingly, undertakes no independent choice-of-law analysis. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).

a. **Statute of Limitations**

In Kentucky, potential plaintiffs must commence personal injury actions within one year after the cause of action accrued. Kentucky Revised Statutes ("KRS") § 413.140(1)(a).

---

[2] In Ashbrook's pleadings, the Court notes that Plaintiff solely addresses her intent and desire to pursue failure to warn claims. However, because it appears that the claims have not been abandoned, *per se*, and because Ethicon challenges them in its motions for summary judgment, the Court finds it best to list the claims here.

Thus, a personal injury plaintiff must file suit within one year of her alleged injury. *Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 406 (6th Cir. 2002) (citing *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972)). This one-year statute of limitations, KRS § 413.140(1)(a), applies equally to products liability cases as it does in personal injury cases. *Richardson v. Rose Transport, Inc.*, 617 F. App'x 480, 484 (6th Cir. 2015).

Ethicon moves for dismissal of all of Ashbrook's remaining claims pursuant to the KRS § 413.140(1)(a). Ethicon relies on *Cutter v. Ethicon*, Inc., No. 5:19-443-DCR, 2020 WL 109809 (E.D. Ky. Jan. 9, 2020) to support its proposition. There, this Court found that accrual of claim for limitations purposes is a question of law for the court. And, similar to the case in current dispute, the allegations in that matter concerned an allegedly defective women's pelvic mesh product. In *Cutter*, Chief Judge Reeves found that it was critical to determine when, *exactly*, the claims accrued.

> A cause of action ordinarily accrues on the date of an injury even if a plaintiff is not made aware of the extent of her injury until later. *Asher v. Unarco Material Handling, Inc.*, No. 6: 06-548-DCR, 2008 WL 2548800, at *3 (E.D. Ky. June 23, 2008); *see also Caudill v. Arnett*, 481 S.W.2d 668, 668-70 (Ky. 1972). However, "[a] cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that [s]he has been injured but also that [her] injury may have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979) (internal quotations and citations omitted). "The discovery rule stops tolling the statute once the plaintiff knows, either actually or constructively, that the defendant 'may' have caused her injury–definitive knowledge of causation is not needed." *Adams v. 3M Co.*, No. 7: 12-61-ART, 2013 WL 3367134, at *3 (E.D. Ky. Jul. 5, 2013) (citing *Louisville Trust Co.*, 580 S.W.2d at 501). "Constructive knowledge, through awareness of sufficient 'critical facts' to put the plaintiff on notice, will trigger the statute of limitations period." *Id.* (citations omitted).

*Cutter*, 2020 WL 109809, at *5. In *Cutter*, the claims were ultimately barred because the doctor had put the plaintiff on notice of "critical facts" regarding "the device's potential defects, trigger[ing] the duty to inquire, and start[ing] the limitations clock ." *Id.* at *6. Indeed, the Court noted that

> plaintiffs … "have a duty to inquire into the safety of product where it is apparent from the facts that the product may have been a potential cause of an injury." *Fluke Corp.* [*v. LeMaster*], 306 S.W.3d 55, 64 [(Ky. 2010)]. …[A] potential plaintiff's awareness of an injury and of the instrumentality causing the injury is enough to trigger the limitations clock and to impose on the plaintiff the duty to discover the responsible parties." *Id.* (internal quotation and citations omitted). The duty to inquire here correlates with the time at which [the plaintiff] acquired constructive knowledge such that an exercise of reasonable diligence would have led her to suspect that the pelvic mesh itself was potentially defective and the defendants were culpable.

*Id.* at *6. "Kentucky Courts have routinely held the statute starts to run when an individual discovers a 'wrong has been committed and not that the party may sue for the wrong.'" *Walker v. Martin*, No. 5:20-cv-00077-TBR, 2020 WL. 7083967, at *2 (W.D. Ky. Dec. 3, 2020) (quoting *Vannoy v. Milum*, 171 S.W.3d 745, 749 (Ky. Ct. App. 2005)). Here, there is no question that specificity of dates is the utmost importance to the inquiry.

As the Court previously noted, Ashbrook had the TVT-O implanted on October 29, 2010. She filed suit against Ethicon on May 8, 2013. In between that timeframe, somewhere around April 2011, Ashbrook states that she began to experience "discomfort" and that she "didn't know what was happening." (DE 16 at 6, ¶ 6b). She stated that her pelvic area would "ache" at night. And that

> [i]t felt like something burrowing. Sex was so painful and I would bleed. I would urinate with sex and on myself. Blood was in my urine, I had constipation.

(*Id.*; *see also* DE 76-2 at 128:15-20). Specifically, however, she noted that "[t]oward the end of 2011 …[the pain during intercourse] was really bad. It was really bad." (DE 76-2 at 136:11-17).

The symptoms continued to worsen. In January 2012, Ashbrook discussed the pain she had been experiencing in her pelvic and groin area, and the dyspareunia, with her gynecologist, Elizabeth Case, M.D. (*See* DE 76-3 at 2-3). Ashbrook saw Dr. Case, again, in March of 2012. (DE 76-4). According to Dr. Case's notes, the pain in Ashbrook's left groin

continued and Ashbrook was experiencing pain in her vagina, while urinating, and pain in her urethra. (*Id.* at 2). Dr. Case palpated the mesh, causing Ashbrook pain. (*Id.*) As a result, she referred Ashbrook to a urologist, Amberly Windisch, M.D., for consultation regarding the possible removal of the mesh. (*Id.* at 3). The appointment with Dr. Windisch occurred on April 9, 2012. (DE 76-5). Ashbrook testified that she discussed mesh removal at this first appointment with Dr. Windisch. (*Id.* at 2; DE 76-2 at 138:9-16). On June 14, 2012, Dr. Windisch saw the plaintiff for the second time, and the first surgery occurred. Ashbrook testified that she did not know conclusively (nor did the doctor) whether the mesh was actually the issue. (DE 76-2 at 138:13-25). But, in the end, Dr. Windisch ultimately removed part of the mesh product during that surgery.

Plaintiff does not mention *Cutter* in her response. She also does not mention any of the critical dates above; nor does she discuss the timeframe regarding *when*, in fact, she began to experience pain and whether that triggered something inside of her to believe that it could be the mesh causing her pain. The facts, however, demonstrate that Ashbrook began to experience severe discomfort, including bleeding in her vaginal area, *at least* sometime in mid-2011. This pain lingered, into January 2012, when she told Dr. Case about the pain, and then again in March 2012. It was the latter appointment, however, where Ashbrook and her doctor discussed the mesh as the possible cause of her pain. This prompted the referral with Dr. Windisch and the appointment on April 9, 2012. At that appointment, Ashbrook scheduled her next appointment with Dr. Windisch for June 12, 2012, for surgery. The Court thus concludes, for purposes here, that either March 2012 or April 2012 triggers the limitations period. Either one of these dates makes Ashbrook's claims filed beyond the one-year deadline.

"A cause of action ordinarily accrues on the date of an injury even if a plaintiff is not made aware of the extent of her injury until later." *Cutter.*, 2020 WL 109809 at *5

(citing *Asher v. Unarco Material Handling*, Inc., 2008 WL 2548800, at *3 (E.D. Ky. June 23, 2008)). Although Ashbrook was not conclusively aware that the mesh was the ultimate source of her pain, she was at lease aware on March or April of 2012 that the mesh could be the likely cause, putting her on notice—at least constructively—to proceed with reasonable diligence. Either of the dates, in March or April of 2012, was enough to trigger the statute of limitations. Ashbrook's claims are time-barred.

## IV.  CONCLUSION

Accordingly, having considered the matter fully and being sufficiently advised, the Court hereby ORDERS that:

1. Defendant's Motion for Partial Summary Judgment and Supplemental Motion for Summary Judgment (DE 63 & 76) are GRANTED.

2. The remaining motions to exclude (DE 64, 65, 66) are DENIED as moot.

3. The telephone conference scheduled for January 26, 2021 at the hour of 11:00 a.m. is CANCELLED

4. A separate judgment will be entered contemporaneously with this Opinion and Order.

5. This matter shall be **STRICKEN** from the Court's active docket.

Dated January 25, 2021.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY